VITA C. CHENET        *       NO. 2022-CA-0666

VERSUS                 *

                       COURT OF APPEAL

COLGATE-PALMOLIVE CO.,      *
ET AL.                      FOURTH CIRCUIT

                *

                       STATE OF LOUISIANA

* * * * * * *

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2018-12536, DIVISION "L"
Honorable Kern A. Reese, Judge
* * * * * *
**Judge Rosemary Ledet**
* * * * * *

(Court composed of Judge Rosemary Ledet, Judge Sandra Cabrina Jenkins, Judge Dale N. Atkins)


Lindsey A. Cheek
THE CHEEK LAW FIRM
650 Poydras Street, Suite 2310
New Orleans, LA 70130

Lewis Owens Unglesby
Lance C. Unglesby
Adrian M. Simm, Jr.
Jamie F. Gontarek
UNGLESBY LAW FIRM
246 Napoleon Street
Baton Rouge, LA 70802

      COUNSEL FOR PLAINTIFF/APPELLEE

James M. Garner
John Thomas Balhoff, II
Curtis J. Case
SHER GARNER CAHILL RICHTER KLEIN & HILBERT, L.L.C.
909 Poydras Street, Suite 2800
New Orleans, LA 70112-4046

      COUNSEL FOR DEFENDANT/APPELLANT

                  **APPEAL DISMISSED; CASE REMANDED**
                  **February 1, 2023**

This is a mesothelioma case. The parties are Vita Chenet's wrongful death beneficiaries—her two sons, Wayne Chenet and Henry Chenet, III (collectively the "Chenet Plaintiffs"); and Colgate-Palmolive Co. ("Colgate"), one of the named defendants.[1] From the trial court's May 11, 2022 judgment finding exposure to asbestos to be a cause of Mrs. Chenet's mesothelioma (the "May Judgment"), Colgate seeks appellate review. Finding the May Judgment was improperly certified under La. C.C.P. art. 1915(B), we dismiss the appeal and remand the case.

FACTUAL AND PROCEDURAL BACKGROUND

Mrs. Chenet was diagnosed with mesothelioma at age 84. Shortly after her diagnosis, Mrs. Chenet filed this suit against Colgate, as well as other manufacturers and sellers of talcum powders, alleging that her mesothelioma was caused by exposure to asbestos contained in the talc. Stated otherwise, she alleged that she had used various talcum powders, including Colgate's Cashmere Bouquet

---

[1] Eight other defendants were named in the petition. According to the parties, three of those other defendants—Johnson & Johnson Consumer Companies, Inc.; Johnson & Johnson; and K&B Louisiana Corporation—are no longer part of the action; these defendants settled before the last trial setting (the "Settled Defendants"). Five of those other defendants—Cyprus Amax Minerals Company; Cyprus Mines Corporation; Imerys Talc America, Inc.; Imerys USA Inc.; and Imerys Talc Vermont Inc.—have been dismissed due to their 2019 solvency or bankruptcy filings.

1

body powder, and that, as a result, she was exposed to asbestos contained in the talc.

In February 2019, Mrs. Chenet died. The following month, the Chenet Plaintiffs filed a supplemental and an amended petition, substituting themselves as plaintiffs. Following discovery, the Chenet Plaintiffs filed a partial summary judgment motion, seeking a declaration on two issues: (1) that Mrs. Chenet has been diagnosed with mesothelioma; and (2) that a cause of Mrs. Chenet's mesothelioma is exposure to asbestos.[2] Opposing the motion, Colgate conceded the first issue, but disputed the second one.[3]

Following a hearing, the trial court granted the Chenet Plaintiffs' partial summary judgment motion. The trial court, in the May Judgment, made two declarations:

- Decedent Vita Chenet was diagnosed with mesothelioma; and

- A cause of Decedent Vita Chenet's mesothelioma is exposure to asbestos.

---

[2] The Chenet Plaintiffs' statement of uncontested material facts was as follows:

- Plaintiff-Decedent Vita Chenet was diagnosed with malignant mesothelioma on October 26, 2018;

- Plaintiff-Decedent's treating physician opined that Vita Chenet had mesothelioma;

- Plaintiff's expert medical doctor, Dr. Brent Staggs, confirmed the diagnosis of mesothelioma and that the mesothelioma was caused by Mrs. Chenet's exposure to asbestos; and

- No party has produced any evidence to dispute any of the above facts.

[3] Colgate's position was that Mrs. Chenet's risk of developing mesothelioma increased due to her age and that mesothelioma can be spontaneous—occur naturally. According to Colgate, this evidence, which directly contradicts the Chenet Plaintiffs' theory, must be heard by the jury to determine the actual cause of Mrs. Chenet's mesothelioma. Further, Colgate contends that this evidence forecloses the Chenet Plaintiffs' request for summary judgment on their causation theory, as it creates an issue of fact that must be resolved by the jury.

From the May Judgment, Colgate sought review both in the trial court—by filing a motion for new trial ("MNT")—and in this court—by filing not only an application for supervisory writ, but also an appeal. While Colgate's writ application was pending in this court, the trial denied the MNT. In the judgment denying the MNT, the trial court certified the May Judgment as final under La. C.C.P. art. 1915(B). Shortly thereafter, this court denied the writ application with reasons, stating that "[p]ursuant to our *de novo* review, we affirm the May 11, 2022 judgment, finding that no genuine issues of material fact exist as to whether asbestos exposure was a cause of Mrs. Chenet's mesothelioma." This appeal followed.

Following the lodging and docketing of this appeal, this court, *sua sponte*, issued a rule ordering the parties to show cause in writing "why this appeal should not be dismissed on the grounds that the May Judgment was improperly designated as final under La. C.C.P. 1915(B) and the May Judgment is, thus, a non-appealable, interlocutory judgment." This court received the parties' responses to the rule. Based on our review of the record, the parties' briefs, and the parties' responses to the rule, we find the judgment is non-appealable, dismiss the appeal, and remand.

## DISCUSSION

The May Judgment, from which this appeal arises, is an issue summary judgment—a summary judgment disposing of "a particular issue, theory of recovery, cause of action, or defense, in favor of one or more parties . . . [but not]

dispos[ing] of the entire case as to that party or parties." La. C.C.P. art 966(E). An issue summary judgment, albeit a partial final judgment, is not an appealable judgment unless it is certified under La. C.C.P. art. 1915(B). *See S. Envtl. Mgmt. & Specialties, Inc. v. City of New Orleans*, 22-0018, pp. 4-5 (La. App. 4 Cir. 5/11/22), 339 So.3d 1234, 1237.[4]

Although the trial court certified the May Judgment as final under La. C.C.P. art. 1915(B), a trial court's certification is not determinative of this court's appellate jurisdiction.[5] An appellate court has a duty to determine—regardless whether the parties raise the issue—whether it has jurisdiction to consider an appeal.[6] Stated otherwise, an appellate court must conduct its own inquiry into the basis for its jurisdiction and the correctness of the trial court's certification—regardless if the parties object—because the certification is jurisdictional.

*Standard of Review of Certification*

The standard an appellate court must apply in reviewing a trial court's certification hinges on whether the trial court provides explicit reasons. When a trial court provides explicit reasons, an abuse of discretion standard applies; when

---

[4] *See also* La. C.C.P. art. 1911(B) (providing that "[n]o appeal may be taken from a partial final judgment under Article 1915(B) until the judgment has been designated a final judgment under Article 1915(B)").

[5] *Wadick v. Gen. Heating & Air Conditioning, LLC*, 14-0187, p. 6 (La. App. 4 Cir. 7/23/14), 145 So.3d 586, 591.

[6] *See Schwarzenberger v. La. State Univ. Health Scis. Ctr.-New Orleans*, 18-0812, p. 2 (La. App. 4 Cir. 1/9/19), 263 So.3d 449, 451-52 (observing that "[a]ppellate courts have a duty to determine, *sua sponte*, whether the court has proper jurisdiction to consider the merits of an appeal filed in the court"); *see also McGaha v. Franklin Homes, Inc.,* 21-0244, pp. 23-24 (La. App. 4 Cir. 2/4/22), 335 So.3d 842, 858, *writ denied,* 22-00374 (La. 4/26/22), 336 So.3d 897 (observing that "an appellate court has a duty to determine, *sua sponte*, whether the court has proper jurisdiction to consider the merits of an appeal filed in the court").

4

a trial court fails to do so, a *de novo* standard applies. *R.J. Messinger, Inc. v. Rosenblum*, 04-1664, pp. 13-14 (La. 3/2/05), 894 So.2d 1113, 1122. When the trial court fails to provide explicit reasons and the basis for the certification is not apparent, an appellate court has the choice of either requesting the trial court provide a *per curiam*, or, as this court opted to do here, ordering the parties, by issuing a rule to show cause, to explain why the appeal should not be dismissed for failure to comply with La. C.C.P. art. 1915. *R.J. Messinger*, 04-1164, pp. 13-14, 894 So.2d at 1122.

Here, the trial court, in its written judgment, cited La. C.C.P. art. 1915(B) and stated that "[b]ased on the reasons discussed in open Court, this Court has made an express determination that there is no just reason to delay the appeal of [the May Judgment]." But, the trial court failed to provide explicit reasons for its certification. Despite the trial court judge's failure to provide explicit reasons in the judgment and this court's issuance of a show cause order, Colgate contends that an abuse of discretion standard applies here. In support, Colgate cites *Thomas v. N. 40 Land Dev., Inc.*, 04-0610 (La. App. 4 Cir. 1/26/05), 894 So.2d 1160.

In *Thomas*, this court found a trial court's statement in its judgment that "there is no just reason for delay," alone, was insufficient to meet the requirements of Article 1915(B).[7] Nonetheless, after reviewing the record and the totality of

---

[7] *Thomas* was decided by this court pre-*R.J. Messinger*. In *Thomas*, this court applied this court's pre-*R.J. Messinger* standard, which was that "Article 1915(B) certifications must be done on a case by case basis taking into consideration the totality of what was intended and whether in context conclusory statements equate to adequate reasons." *Thomas*, 04-0610, p. 17, 894 So.2d at 1172 (internal quotations and citation omitted). Applying that standard, this court in *Thomas* found that the trial court's oral reasons were sufficient to equate to adequate reasons. In *R.J. Messinger*, however, the Supreme Court held that "the certified final judgment is properly before the appellate court even when the trial court fails to give explicit reasons for its determination." 04-1664, p. 14, 894 So.2d at 1123. Post-*R.J. Messinger*, a trial court's failure to give explicit

what was intended, this court found "adequate reasons" to support the trial court's conclusory statement. We observed that trial court judge "expressed concerns at the summary judgment hearing regarding the impact of a recent decision by this court" in which this court reversed another summary judgment decision by the same trial court judge. *Thomas*, 04-0610, p. 18, 894 So.2d at 1172. Given the judge's statements at the hearing, this court found that "the statutory requirement that the trial court make an express determination that there was no just reason for delay was complied with." *Thomas*, 04-0610, p. 18, 894 So.2d at 1172.

Colgate contends that the trial court judge in this case, like the trial court judge in *Thomas*, discussed on the record at the hearing possible uncertainties of the law and the potential for appellate reversal and that such oral discussion was sufficient to constitute explicit reasons for certification. Colgate points out that the trial court judge noted that the law on causation of mesothelioma was "evolving," but the judge was unaware that mesothelioma can be spontaneous or idiopathic like other cancers.

Colgate's reliance on *Thomas* is misplaced. Unlike in *Thomas*, the trial court judge made only a general statement regarding potential appellate court reversal— the trial court commented that this court had reversed his prior decisions in other unrelated cases. Likewise, the trial court judge's remarks regarding uncertainty in the law, unlike in *Thomas*, were not linked to any particular ruling by this court.[8]

---

reasons is only a factor in determining the standard of review, not in determining if jurisdiction exists.

[8] Colgate also points out that the trial court judge, in deciding to designate the judgment as final, orally stated that he "will be interested to see what the Fourth Circuit says about this." We view this statement, however, as more of an accommodation to counsel than a reason for finding no just reason for delay. Indeed, the trial court's entire statement was as follows: "if you desire, I will mark it as a final judgment. If you want to appeal or writ whichever and [I] will be interested to see what the 4th Circuit says about this."

Hence, we find that a *de novo* standard of review applies here. To provide a background for conducting a *de novo* review, we begin by outlining what it is the trial court decided and placing its ruling in context.

*Contextual Background*

As noted at the outset of this opinion, this is a mesothelioma case. The Chenet Plaintiffs are asserting wrongful death and survival claims based on Mrs. Chenet's alleged asbestos exposure. "Traditional tort theories apply in evaluating liability in an asbestos case. These tort theories require proof of causation–that the plaintiff was exposed to asbestos for which the defendant is responsible." *Pete v. Boland Marine & Mfg. Co.*, 21-0626, p. 19 (La. App. 4 Cir. 1/5/23), ___ So.3d ___, ___, 2023 WL 110608, *9.[9]

The jurisprudence has recognized that, in asbestos cases, causation has two components—general and specific; "[g]eneral causation is whether a substance is capable of causing a particular injury or condition in the general population, while specific causation is whether a substance caused a particular individual's injury." *Comardelle v. Pennsylvania Gen. Ins. Co.*, 76 F.Supp.3d 628, 630, n. 10 (E.D. La. 2015) (internal quotations and citations omitted). This court has recognized that distinction.[10]

According to the Chenet Plaintiffs, the trial court's ruling that "[a] cause of Decedent Vita Chenet's mesothelioma is exposure to asbestos" is only a finding of

---

[9] *See also Thomas v. A.P. Green Indus., Inc.*, 05-1064, p. 22 (La. App. 4 Cir. 5/31/06), 933 So.2d 843, 859 (observing that "[i]n evaluating liability in an asbestos case, traditional tort liability theories, including negligence, apply and require proof of causation"). Indeed, causation has been described as the premier hurdle faced by plaintiffs in asbestos litigation. *Zimko v. Am. Cyanamid*, 03-0658, p. 25 (La. App. 4 Cir. 6/8/05), 905 So.2d 465, 484.

[10] *See Zimko*, 03-0658, p. 28, 905 So.2d at 485-86 (observing that "American Cyanamid contends that Mrs. Zimko's experts, at best, established general causation—that asbestos fibers a worker brings home can cause disease—not specific causation—that asbestos fibers from American Cyanamid's facility actually caused Kenneth Zimko's mesothelioma").

general causation, leaving the more difficult issue of specific causation for them to prove at trial.[11] Colgate disputes this characterization of the trial court's ruling. Colgate contends that the trial court's ruling includes a partial finding of specific causation, which can have multiple levels. We find it unnecessary to decide this issue. For purposes of our analysis, we define the trial court's ruling simply as a partial finding on the overall causation issue. The trial court's ruling is neither an adjudication of causation, nor a finding of tort liability.

The significance of the trial court's ruling—as Colgate repeatedly contends—is more evidentiary than substantive.[12] At the hearing on the motion for new trial, the trial court judge queried Colgate's counsel as to what was Colgate's objection to the ruling. Colgate's counsel's response was as follows:

> [W]e do not want it to be misinterpreted that [asbestos] was the cause of her mesothelioma. When I stand up at trial . . . to put in the testimony that it is idiopathic or spontaneous or caused by Higgins,[13] there is no objection that you decided the issue and I cannot put on those defenses.

Colgate's objection, thus, is that the ruling could have a direct impact on the trial presentation to the jury and could cause confusion for the jury. Indeed, Colgate emphasizes that the Chenet Plaintiffs have admitted they will argue that despite evidence at trial from Colgate's experts regarding spontaneous mesothelioma, a

---

[11] *See Cortez v. Lamorak Ins. Co.*, CV 20-2389, 2022 WL 1135830, at *1 (E.D. La. Apr. 18, 2022) (granting a similar partial summary judgment motion and observing that "[t]he Court need not deny the 'portion' of plaintiff's motion regarding specific causation, because his motion contains no such portion").

[12] In its reply brief to the show cause order, Colgate repeatedly states that the certification decision should be upheld because, if not, the May Judgment may have a direct impact on the presentation of evidence to the jury.

[13] When Mrs. Chenet was a small, her father was employed at Higgins Industries shipyard. During that time, Mrs. Chenet lived with her father in a "Higgins Hut." Based on this information, Colgate has asserted as a defense that Mrs. Chenet suffered take-home asbestos exposure. Colgate's two other defenses are that one of Settled Defendants' talcum powder products was the source of exposure or that it was spontaneous mesothelioma.

8

summary judgment ruling on asbestos as a cause of Mrs. Chenet's mesothelioma

"means that Colgate would be unable to use the empty chair defense of

'spontaneous mesothelioma.'"

*De Novo Review*

The Louisiana Supreme Court, in *R.J. Messinger*, enunciated the following

principles that govern the review of a trial court's certification decision:

- Article 1915, like [Fed. R. Civ. Pro.] Rule 54, attempts to strike a balance between the undesirability of piecemeal appeals and the need for making review available at a time that best serves the needs of the parties.

- In order to assist the appellate court in its review of designated final judgments, the trial court should give explicit reasons, either oral or written, for its determination that there is no just reason for delay.

- The following list of factors, although not exclusive, may be used by trial judges when considering whether a partial judgment should be certified as appealable:

    i. The relationship between the adjudicated and unadjudicated claims;

    ii. The possibility that the need for review might or might not be mooted by future developments in the trial court;

    iii. The possibility that the reviewing court might be obliged to consider the same issue a second time; and

    iv. Miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like.

  However, the overriding inquiry for the trial court is whether there is no just reason for delay.

- Courts of appeal, when conducting *de novo* review in matters where the trial court fails to give explicit reasons for the certification, can consider these same criteria.

*R.J. Messinger*, 04-1664, pp. 13-15, 894 So.2d at 1122-23 (internal quotations and

citations omitted and reformatted).

Before considering the four *R.J. Messinger* factors, we first address the Chenet Plaintiffs' suggestion that the non-final, evidentiary ruling nature of the May Judgment dictates a finding that the certification is improper. In support of this argument, they cite *Leray v. Nissan Motor Corp, in U.S.A.*, 04-1282 (La. App. 1 Cir. 06/10/05), 916 So.2d 260, 263. In that case, the trial court certified an issue summary judgment decreeing that "the alleged fault of medical malpractice tortfeasors could be presented to the jury, and if proven, quantified in an allocation of fault among all alleged tortfeasors." *Leray*, 04-1282, p. 5, 916 So.2d at 263. The appellate court in *Leray* observed that "[j]udgments ruling on evidentiary issues or deciding purely procedural issues generally are examples of judgments that cannot be properly designated because they are not final." *Leray*, 04-1282, p. 2, 916 So.2d at 261 (citing Mark Tatum and William Norris, III, Summary Judgment and Partial Judgment in Louisiana: The State We're In, 59 LA. L. REV. 131, 158 (1998) ("*Tatum & Norris*"). We decline to base our decision on this ground.[14]

_____

[14] In finding the certification improper, the appellate court in *Leray* relied, in part, on the evidentiary nature of the trial court's ruling, observing that "although Article 1915 dispenses with finality in the sense of completion of the litigation, the judgment rendered must be sufficiently final in that it disposes of the claim or dispute in regard to which the judgment is entered." *Leray*, 04-1282, p. 5, 916 So.2d at 263. This statement is based on the federal jurisprudence under Rule 54(b). *See LHO New Orleans LM, L.P. v. MHI Leasco New Orleans, Inc.,* 03-1283, p. 5 (La. App. 4 Cir. 3/3/04), 869 So.2d 304, 307 (repeating this same statement and citing *McMunn v. Hertz Equip. Rental Corp.*, 791 F.2d 88, 90 (7th Cir.1986)). Although the Legislature patterned La. C.C.P. art. 1915(B)'s certification requirement after federal Rule 54(b), "the language differences between Article 1915(B) and Rule 54(b) . . . . [create] confusion concerning how similar the legislature intended the state and federal certification processes to be." *Tatum & Norris*, 59 La. L. Rev. at 158. One difference between these provisions is that unlike Rule 54(b), La. C.C.P. art. 1915(B) lacks a multiplicity of claims requirement. Given this difference, the federal jurisprudence directed to determining whether the judgment is final, in the sense that it is satisfies Rule 54(b)'s multiplicity of claims requirement, is inapposite to determining whether certification is proper under La. C.C.P. art. 1915(B).

As noted elsewhere in this opinion, the May Judgment is an issue summary judgment authorized by La. C.C.P. art. 966(E). A commentator has observed that La. C.C.P. art. 966(E), by its literal terms, authorizes a trial court to grant an issue summary judgment on virtually any merits issue, including a declaratory-type judgment or a judgment that grants "no further relief." *Tatum & Norris*, 59 La. L. Rev. at 169.

Recognizing the potential for piecemeal appeals created by expanding the permissible scope of summary judgments, the Legislature added a parallel provision in La. C.C.P. art. 1915(B) to require that issue summary judgments be certified in order to be appealable. As a commentator observes, "[t]he possibility that the widespread use of partial summary judgments to dismiss claims, theories, causes of action and defenses could create too many piecemeal appeals is hedged by the requirement in Article 1915B(1) that such rulings are not final and appealable unless expressly certified as such by the trial court" and that, when granted, such requests "are subject to reversal by the appellate courts." William R. Forrester, Jr., *Summary Judgments Are Favored - Really?*, 59 La. B.J. 22, 24 (2011). Given the broad scope of permissible issue summary judgments, the commentators also have observed that "it is of paramount importance that a trial court judge fully understand and carefully perform the role of 'dispatcher,' rather than routinely certifying partial judgments." *Tatum & Norris*, 59 LA. L. REV. at

169 (quoting *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 8; 100 S.Ct. 1460, 1465; 64 L.Ed.2d 1 (1980)).[15]

To recap, the ruling at issue, albeit in the nature of an evidentiary ruling, is an issue summary judgment that the trial court certified as final under La. C.C.P. art. 1915(B).[16] The issue before us is thus whether that certification was proper. On *de novo* review, this court applies the same four *R.J. Messinger* factors that the trial court considers. We separately address each of those four factors.

*Relationship between the Adjudicated and Unadjudicated Claims*

In their response to the show cause order, the Chenet Plaintiffs present a factual and legal argument regarding to the first factor. Factually, they contend that the relationship between adjudicated[17] and unadjudicated claims weighs heavily in favor of this ruling being classified as an interlocutory judgment. The Chenet Plaintiffs emphasize that their burden is not relaxed by this partial summary judgment. They emphasize that, despite this ruling, they have to prove the specific causation of Mrs. Chenet's mesothelioma—that Colgate's asbestos-contaminated

---

[15] Explaining the "dispatcher" role, the United States Supreme Court in *Curtiss-Wright* observed that "[i]t is left to the sound judicial discretion of the district court to determine the appropriate time when each final decision in a multiple claims action is ready for appeal. This discretion is to be exercised in the interest of sound judicial administration." 446 U.S. at 8; 100 S.Ct. at 1465.

[16] Under Louisiana law, certain types of judgments cannot be certified as final for purposes of appeal, such as a judgment denying a summary judgment. *See* La. C.C.P. art. 968 (providing that "[a]n appeal does not lie from the court's refusal to render any judgment on the pleading or summary judgment"). But, the granting of a summary judgment, including an issue summary judgment under La. C.C.P. art. 966(E), can be certified under La. C.C.P. art. 1915(B) as a final judgment.

[17] Arguably, there is no adjudicated claim here; rather, the trial court simply made a partial causation ruling. *See Walker v. Archer*, 16-0171 (La. App. 4 Cir. 10/5/16), 203 So.3d 330, 336 (observing that "we are unable to conclude that the judgment 'adjudicated' any claim"). Assuming the trial court made an adjudication, the trial court's ruling, at best, adjudicated one narrow aspect of the overall causation issue—one aspect of the tort liability claim.

talcum powder caused her mesothelioma. Should the trial court deny the Chenet Plaintiffs' pending partial summary judgment regarding the Higgins Hut take-home exposure, the Chenet Plaintiffs point out that they will have to prove that asbestos in talcum powder—rather than Higgins Hut take-home exposure—caused Mrs. Chenet's mesothelioma. Moreover, they point out that in addition to causation, they must prove the remaining elements of their causes of action.

Legally, the Chenet Plaintiffs contend that when, as here, a trial court's summary judgment ruling only decides one aspect of a tort liability claim, Louisiana courts have routinely held that certification is improper. As an example, they cite *Young v. City of Plaquemine*, 04-2305 (La. App. 1 Cir. 11/4/05), 927 So.2d 408. In *Young*, the appellate court held that the trial court abused its discretion in certifying a partial summary judgment determining causation in a negligence action. In so doing, the appellate court reasoned that allowing an immediate appeal from a judgment finding that a plaintiff has met some, but not all, of the elements of a negligence liability claim would encourage piecemeal appeals, cause delay, and result in judicial inefficiency.[18]

---

[18] *See also Templet v. State ex rel. Dep't of Pub. Safety & Corr.*, 05-1903, p. 8 (La. App. 1 Cir. 11/3/06), 951 So.2d 182, 186-87 (observing that "allowing an immediate appeal of a decision deciding one, but not all, of the liability issues raised by this lawsuit only serves to encourage multiple appeals and piecemeal litigation, causing delay and judicial inefficiency" and finding that "there are no compelling reasons for certifying the judgment as final and immediately appealable that would outweigh these judicial administrative interests"); *Leray*, 04-1282, p. 5, 916 So.2d 260, 263 (observing that "[t]he issues of liability and degree of liability, as well as damages, have yet to be adjudicated in this matter"); *Robein v. Assadedo*, 10-538, p. 7 (La. App. 5 Cir. 12/3/10), 54 So.3d 1151, 1155 (observing that "the trial judge rendered a partial summary judgment on only one aspect of liability raised in this litigation—causation" but that "there are outstanding liability issues that must be adjudicated by the jury before liability can be determined"); *Humphrey v. State ex rel. Dep't of Corr. at Angola Corr. Ctr.*, 11-2272 (La. App. 1 Cir. 6/13/12) (*unpub.*), 2012 WL 2155237, *4 (observing that "[t]he trial court ruled on only a portion of the elements of liability (i.e., the duty and breach elements) and did not determine that the State was a cause-in-fact of the plaintiff's injuries, and therefore liable to the plaintiff for his

---

Colgate counters only with a legal argument. Citing *Ellis v. La. CVS Pharmacy, LLC*, 14-1699 (La. App. 1 Cir. 6/5/2015) (*unpub.*), 2015 WL 3545925, Colgate submits that Louisiana appellate courts have upheld a trial court's certification of a partial summary judgment on the tort causation issue. Colgate's reliance on *Ellis* is misplaced.

In *Ellis*, the trial court granted a partial summary judgment dismissing a wrongful death claim based on the plaintiff's failure to provide expert evidence on the issue of medical causation. Simply put, *Ellis* was a no-expert grant of summary judgment, dismissing a wrongful death claim. Here, in contrast, there was no dismissal of any claim. Regardless, there was no analysis of the certification issue in *Ellis*; rather, the certification issue was resolved in a conclusory footnote, which stated that "[b]ased on our *de novo* review of the matter, we find that the trial court properly certified this judgment as final for purposes of an immediate appeal." *Ellis*, 14-1699, p. 3, n. 2, 2015 WL 3545925,*3.

In sum, the first *R.J. Messinger* factor weighs against a finding that certification was proper.

*Possibility that Future Developments in Trial Court May Moot Need for Review*

In their responses to the show cause order, the parties take diametrically opposite positions on the second factor. Colgate's position is that the trial court's ruling that asbestos was a cause of Mrs. Chenet's mesothelioma is now cemented

damages" and finding judgment not properly certified); *Stanley v. Potts*, 20-1315, p. 6 (La. App. 1 Cir. 6/4/21) (*unpub.*), 2021 WL 2283916, *3 (observing that "[i]n light of the unresolved liability issues and the procedural posture of this case, we find that any ruling on the independent negligence issue at this time would promote piecemeal appeals, causing delay and judicial inefficiency").

in the case and that no other possible motions in the trial court will affect this discrete issue.

The Chenet Plaintiffs counter that possible future developments may moot this issue and cite concrete examples. First, they cite their pending partial summary judgment regarding the Higgins Hut take-home exposure. If their motion is denied, they contend that Colgate will not dispute that Mrs. Chenet's mesothelioma was caused by asbestos exposure, albeit it will allege that the exposure was from her father's work at Higgins. Alternatively, the Chenet Plaintiffs contend that if the trial court grants their pending motion, Colgate will point to the Settled Defendants as having caused Mrs. Chenet's mesothelioma. As a result, the Chenet Plaintiffs contend that this issue will be moot because Colgate will simply point to other asbestos exposures through Mrs. Chenet's use of other talcum powders. We find the Chenet Plaintiffs' arguments that future developments in the trial court may moot the issue ruled upon in the May Judgment persuasive.

In sum, the second *R.J. Messinger* factor weighs against a finding that certification was proper.

*Possibility that Appellate Court May Have to Consider the Same Issue Twice*

As to the third factor, Colgate contends that if this court fails to consider this causation issue now on appeal, this court may be required to consider the issue more than once because it may cause a second trial to be necessary. Colgate contends that the issue should be decided now, before trial, so that it knows how—and even whether—it may put on its defense to the jury that Mrs. Chenet's

15

mesothelioma may have been spontaneous. According to Colgate, failure to address the trial court's ruling on causation may result in a second trial—and potentially a second appeal—if this court were to agree with Colgate after a first trial that there was insufficient pretrial support for the trial court's causation ruling that improperly tainted the jury's findings, as well as Colgate's presentation of its evidence.

The Chenet Plaintiffs counter that this court has already had to review this issue through a supervisory writ and would obligate itself to possibly review this issue a third time after appeal from a final judgment.[19] We agree.[20] The third *R.J. Messinger* factor weighs against finding certification was proper.

*Miscellaneous Factors*

The fourth factor requires this court to consider miscellaneous issues affecting the efficient administration of justice, including delay and the nature of the issue involved. As to the nature of the issue involved, Colgate cites jurisprudence holding that a court's classification of an issue as "compelling" or "important" weighs in favor of certification.[21] Colgate contends that such is the

[19] *See In re T.A.S.*, 04-1612, p. 4 (La. App. 1 Cir. 10/29/04), 897 So.2d 136, 139 (observing that "[w]hen an unrestricted appeal is taken from a final judgment, the appellant is entitled to seek review of all adverse interlocutory rulings prejudicial to him, in addition to review of the final judgment appealed").

[20] *See City of Baton Rouge v. Am. Home Assur. Co.*, 06-0522, pp. 8-9 (La. App. 1 Cir. 12/28/06), 951 So.2d 1113, 1119-20(observing based on the extensive procedural history including multiple prior appeal and writs that "there is a very real possibility that this court might have to address the same issues in another appeal").

[21] *See Scott v. Leonard J. Chabert Med. Ctr.*, 10-0192, p. 7 (La.App. 1 Cir. 12/22/10), 53 So.3d 714, 718 (observing that "[w]hile we recognize that this partial summary judgment resolves only one of the issues on which the Scott's claims against Chabert are based, we also recognize that this one issue appears to be the compelling issue in the litigation"); *Cargill, Inc. v. Syngenta Seeds, Inc.*, 21-681, pp. 7-8 (La. App. 5 Cir. 12/7/22), ___ So.3d ___, ___, 2022 WL 17481922,

case here given that causation is a central issue coupled with the trial court's finding that this issue should be decided by this court before trial.

Contrary to Colgate's contention, we find the trial court's expression of an interest in having this court resolve the issue before trial was simply an accommodation to counsel, which is not a valid basis for certification.[22] Moreover, to the extent the trial court expressed such an interest, we find this court's writ denial from this same May Judgment sufficed to satisfy the trial court's interest. Indeed, the trial court stated he would be interested to know what this court said about the issue by either writ or appeal. Indeed, but for the timing of this court's writ disposition—shortly after the trial court's certification—the trial court may not have certified the May Judgment.

Another miscellaneous factor is delay. Although there is no time limit for a litigant to seek certification, the Louisiana Supreme Court has cautioned that delay weighs against certification. *See Fraternal Order of Police v. City of New Orleans*, 02-1801, p. 4 (La. 11/8/02), 831 So.2d 897, 900 (observing that "[o]bviously, if substantial delay has occurred between the rendition of a partial judgment and a motion for certification, this is a factor the trial court can access in exercising its discretion as to whether the motion should be granted or denied"); *R.J. Messinger*,

---

*4 (observing that "the importance of the damages issue, combined with the confusion the ruling might impose over introduction of evidence at trial, provide an ample legal basis for conducting an immediate appeal").

[22] *See Banks v. State Farm Ins. Co.*, 30,868, p. 3 (La. App. 2 Cir. 3/5/98), 708 So.2d 523, 525 (observing that "[f]ederal courts also hold that certification of a judgment should not be granted as a courtesy or accommodation to counsel").

17

p. 14; 894 So.2d at 1122 (citing delay as a miscellaneous factor). Such is the case here.

Colgate initially opted to seek a new trial from the May Judgment. When the Chenet Plaintiffs challenged that procedural maneuver as improper given the interlocutory nature of the May Judgment at that time[23]—an uncertified issue summary judgment under La. C.C.P. art. 966(E)—Colgate, in its reply, acknowledged the interlocutory nature of the ruling. Thereafter, Colgate filed a motion to certify the May Judgment as final in the trial court and a writ application seeking review of the May Judgment in this court. Colgate, thus, delayed seeking certification.

Although Colgate has taken inconsistent positions on whether the May Judgment is a final or an interlocutory one, the Chenet Plaintiffs point out that they have consistently argued that the May Judgment is an interlocutory one. Moreover, they emphasize that Colgate has already had the benefit of appellate review by supervisory writ. The Chenet Plaintiffs further emphasize that the trial in this matter has already been delayed multiple times and that the litigation on this issue alone has already taken several months. When, as here, the trial court has stayed the matter, the jurisprudence has recognized that "consideration of the issue now will only delay the ultimate resolution of the case" *Cannisnia Plantation, L.L.C. v. Am. Energy Holdings, L.L.C.*, 42,170, p. 2 (La. App. 2 Cir. 1/25/07), 947 So.2d

---

[23] It is well-settled that "a party can only request a motion for new trial on a final judgment." *Zapata v. Seal*, 20-01148, p. 2 (La. 9/30/21), 330 So.3d 175, 177.

18

235, 237. For these reasons, we find the fourth factor weighs against a finding that certification was proper.

Summarizing, based on our consideration of the *R.J. Messinger* factors, review of the record, the parties' briefs, and the parties' response to the show cause order, we conclude that the trial court improperly certified the May Judgment as final for purposes of appeal under La. C.C.P. art. 1915(B).

"When, as here, a non-appealable judgment is appealed, this court has the discretion to convert the appeal to an application for supervisory writ." *Forstall v. City of New Orleans*, 17-0414, p. 5 (La. App. 4 Cir. 1/17/18), 238 So.3d 465, 469. The authority to do so, however, is not unlimited. Two reasons dictate against doing so here. First, the condition that the appeal must have been filed within the thirty-day period for filing a writ application is not satisfied. Second, this court has already denied a writ seeking review of the May Judgment. For these reasons, we find it inappropriate to convert this appeal to a writ.

## DECREE

For the foregoing reasons, we dismiss the appeal for lack of appellate jurisdiction and remand this case.

**APPEAL DISMISSED; CASE REMANDED**